F. N. DRANE ET AL. V. SABINE VALLEY COLORED BAPTIST CHURCH ET AL.

No. 6398.   Decided June 12, 1935.
Rehearing overruled July 3, 1935.
(82 S. W., 2d Series, 939.)

*George Prendergast,* of Marshall, and *Edwin Lacy,* of Longview, for plaintiff in error.

A judgment not supported by the pleadings should be reversed or a proper judgment rendered.   Needham v. Cooney, 173 S. W., 979; Edinburg Irr. Co. v. Paschen, 235 S. W., 1088; Short v. Stephens, 44 S. W. (2d) 466.

*Taylor, Storey & Dotson, Bramlette & Meredith,* all of Longview, and *W. H. Barnes,* of Terrell, for defendants in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On November 11, 1909, the Sabine Valley Baptist Church acquired an acre of land in Gregg County. This church is composed of colored people, and the members thereof as well as the acre of land apparently attracted but little attention until the year 1931, when production of oil near the land aroused much interest over the little tract and in the general welfare of this little congregation.

On January 16, 1931, R. B. White, L. R. Jones, Taylor Anderson and Jesse Anderson were the duly elected, ordained and acting deacons of the church. Although the acre of land had been deeded to certain parties as trustees for the church, apparently trustees were unknown in this little assembly, and the deacons undertook to and did look after and attend to all business matters and all the "temporal" affairs of the congregation. Under the usages and practices of Baptist churches the deacons have no power or authority to execute leases or convey real estate, or to contract in matters involving liability on the part of the church, without being specially authorized to do so by the church in conference. Under such practices and usages, however, the action of the deacons in matters of this kind, after having been done, can be ratified and confirmed by the church.

On January 16, 1931, the deacons, with the advice and consent of the pastor of the church, negotiated a contract with John R. Alford for an oil and gas lease upon the acre of land, with the understanding and agreement that the same would not be valid and binding until ratified and approved by the church in conference. In pursuance of the agreement the deacons and the representative of Alford had Judge Campbell of Longview to prepare an oil and gas lease in the usual commercial form and also to prepare a resolution to be adopted by the church authorizing the execution of the lease and also authorizing the deacons as trustees to sell a part or all of the royalty. The lease prepared by Judge Campbell bore date January 16, 1931, and was duly signed and acknowledged by the deacons acting as trustees on that date. The church met in regular services on Sunday, January 18, 1931, and went into conference for the purpose of considering the action of the deacons in making the agreement with Alford. There appears to have been a full discussion of the matter and the church by unanimous vote rati-

fied and approved the action of the deacons in executing the lease. After the church had ratified the action of the deacons, the lease was delivered and the consideration named therein was paid to and accepted by the church.

On March 12, 1931, the deacons of the church, acting as trustees, executed and delivered to F. N. Drane, R. C. Love, and Johnnie Alford a deed conveying an undivided one-half interest in and to the oil, gas and minerals in the one acre of land, subject to the prior lease executed to Alford, which conveyance entitled the grantees to one-half of all royalties paid under the lease. Alford afterwards made assignment of the lease to J. O. Whittington, who in turn assigned it to the G. & A. Oil Corporation, retaining an overriding royalty. The oil corporation drilled a well upon the land and at the time of the trial the well was producing oil in large quantities.

Just prior to March 14, 1931, A. W. Henderson contacted certain persons, who advised him that one or more of the members of the church were dissatisfied as to the manner in which the prior lease had been executed. Henderson opened negotiations through Professor Harris and one Tom Sherman for a lease upon the acre of land and for the purchase of a one-half royalty interest. On the date mentioned the church met in regular conference, and the minutes of the meeting show that Harris, Sherman and one Whittaker were elected by the church as trustees. A motion was then adopted to the effect that the trustees be instructed to lease to Henderson the one acre of land and to sell one-half of the royalty to him for a consideration of $100.00, and that they "complete the signing of lease form and royalty deed at the earliest possible date." The trustees named did execute a lease and royalty deed to Henderson on the same date and received from him $100.00, which the church accepted.

It was testified to by several witnesses, and not disputed by Henderson, that he took the position that the prior lease and mineral deed to Alford were void, on the theory that they had been executed by the deacons and not by trustees. It is further shown that he expressed himself as being willing to take his chances with Alford, and bear the loss in the event the lease and conveyance to Alford were upheld by the court. Giving effect to all of the testimony, it is evident that Henderson was contracting for and intended to purchase exactly the same interest in the land as had been acquired by Alford under his lease and mineral deed. In other words, there seems to be no doubt that the members of the church understood and intended to contract upon the theory that they still owned, after the

lease and conveyance to Henderson, a one-half interest in the royalty, and that the land would be subject to either the Alford or Henderson lease.

The drilling of the well upon the land under the Alford lease precipitated this litigation. While the suit was originally brought by Marion M. Travis (who later took a non-suit) against A. W. Henderson, so far as the questions now before the court are concerned Henderson will be regarded as plaintiff, Alford, Love, Whittington, Drane and the oil corporation will be regarded as defendants, and the Sabine Valley Baptist Church will be regarded as intervener.

Henderson as plaintiff filed his suit against defendants Alford and others in the form of trespass to try title, claiming an interest in the oil, gas, and minerals by virtue of the lease and the mineral deed to him of March 14, 1931. The defendants answered by general demurrer, general denial and plea of not guilty. They also filed a cross action against Henderson, setting out that they owned the lease upon the land of date January 16, 1931, which they alleged to be valid, and setting out that they also owned a one-half interest in the oil, gas and minerals by virtue of the deed of conveyance of March 12, 1931. Further, by way of cross action and action for affirmative relief, defendants sought to clear their title to the one-half interest in the minerals from cloud cast upon it by claim of plaintiff Henderson. They proceeded to set out in nature of Henderson's claim, alleging that it consisted of the lease and mineral deed of March 14, 1931, both of which were alleged to be invalid because obtained by fraud and misrepresentation. The basis of the allegation of fraud was that Henderson had represented to the members of the church that the lease and deed which they had made to Alford were invalid, because executed by the deacons and not by trustees. It was further alleged that Henderson represented that he "did not desire to purchase any interest in the mineral title in and to said land except the leasehold estate and the one-half interest in the royalty or mineral rights subject to said lease *previously purchased by the defendants Alford et al.*" (Emphasis ours.)

They prayed that plaintiff Henderson take nothing by his suit and that they (defendants) "have affirmative relief and judgment against the said Henderson cancelling the oil and gas lease as made to the said Henderson as well as the mineral deed made to said Henderson."

After having specially pleaded their interest in the minerals, the defendants made the following significant allegation:

. "And that the other one-half interest in and to the mineral title in and to said land subject to said oil and gas *lease is owned by the Sabine Valley Colored Baptist Church.*" (Emphasis ours.)

The Sabine Valley Baptist Church, acting by its pastor and deacons as trustees, intervened in the suit. They answered the petition of Henderson by general demurrer and general denial and specially pleaded that the church owned a one-half interest in the mineral title to said property, subject to the lease to Alford of January 16, 1931. They then adopted in toto the answer and cross action of defendants Alford and others. They prayed that Henderson take nothing as against the defendants and as against the church, and that they have affirmative relief against Henderson "cancelling the oil and gas lease as made to said Henderson as well as the mineral deed made to said Henderson, and for special and general relief." Copies of the lease and deed to Henderson of date March 14, 1932, and which were sought to be cancelled, were attached to the petition of intervention.

Henderson made replication to the cross action of defendants Alford and others by denying various allegations affecting his title to the lease and mineral deed of date March 14, 1931, and prayed as in his original petition. He does not appear to have answered the petition of intervention filed by the church.

From the foregoing it is clearly shown that the following matters only were involved in the lititgation when the case went to trial:

(1) The question of the validity of the lease of January 16, 1931, executed by the church to Alford.

(2) The question of the validity of the lease of March 14, 1931, executed by the church to Henderson.

Incidental to these questions was the question of the relative superiority of the leases as touching the seven-eighths working interest in the oil, gas and minerals.

(3) The title to one-half interest in the minerals.

It is perfectly obvious that the one-half interest thus involved was the interest claimed by defendants Alford and others and plaintiff Henderson by virtue of their conflicting deeds of March 12, 1931, and March 14, 1931. In other words, it is clear that defendants Alford and others and the church were proceeding and predicating their action upon the theory that the one-half interest in the oil, gas and mineral which the church had purported to convey to Henderson was the same identical one-half interest which had been conveyed to Alford

on March 12, 1931, and that the other one-half interest was still in the church and not involved in the litigation. Undoubtedly Henderson took the same view of the situation, but his attitude is immaterial to the decision of the case. The petition of Alford and others in cross action against Henderson clearly shows that the interest acquired by them under the deed of March 12, 1931, was the one-half interest they were seeking to clear the title to by cancellation of the deed of March 14, 1931, to Henderson; and they had specially alleged that Henderson had agreed to purchase and had purchased the same one-half interest which had been conveyed to them on March 12, 1931. In addition they further specially alleged that the other one-half interest in the minerals was owned by the church.

Thus we see that the one-half interest in the minerals claimed by the church was never involved in the litigation and never became the subject matter of any controversy between any of the parties.

The judgment of the trial court, based upon findings of fact made and filed by the court, was in substance as follows:

(1) That the lease of January 16, 1931, by the church to Alford was valid.

(2) That the mineral deed of March 12, 1931, by the church to Alford was void.

(3) That the mineral deed by the church to Henderson of March 14, 1931, conveying one-half interest in the minerals, was valid.

The title of defendants Alford and others was quieted as to the seven-eighths working interest covered by the lease of January 16, 1931. Their title to a one-half interest in the minerals was set aside. The title of Henderson to a one-half interest in the minerals was quieted and the title of the church to one-half interest in the minerals was established.

The judgment of the trial court was affirmed by the Court of Civil Appeals. 52 S. W. (2d) 1068.

Since the granting of the writ of error herein a settlement has been made between defendants Alford and others and plaintiff Henderson, and Henderson's application for writ of error has been dismissed. This takes out of the case the question of the validity of the lease of January 16, 1931, which the church recognizes and ratifies. This also takes out of the case the question of the invalidity of the second lease and the validity of the mineral deed to Henderson. The church has not appealed from the judgment in favor of Henderson as to his mineral deed.

The only question now left in the case and presented by

assignments is the contention made by defendants Alford and others that the trial court erred in rendering judgment in favor of the church for an undivided one-half interest in the minerals. Their claim is that there was no pleading on the part of the church to authorize a cancellation of the deed of March 12, 1931, and no prayer on the part of the church for judgment against them (defendants) for the one-half interest in the minerals which had been conveyed to Alford on March 12, 1931. The answer to this contention has been made clear by the preceeding statement. It is obvious that the defendants Alford and others have by the judgment of the court lost their one-half interest in the minerals to Henderson and not to the church, and they have not prosecuted any appeal from the judgment in favor of Henderson. While the judgment of the trial court contains a formal recital that the church recovered of defendants Alford and others title to a one-half interest in the minerals, it is apparent that this was merely intended to establish and quiet the title of the church to the one-half interest not involved in the litigation; and was not intended to divest the title which had been conveyed by the deed of March 12, 1931. That title had been deliberately involved in the litigation by defendants in their controversy with Henderson and they have permitted Henderson to obtain a judgment for same. The defendants admitted title of the church to the other one-half interest in the minerals and on this admission the court was authorized to declare the title to same in the church, regardless of the pleadings.

The assignments upon which the writ of error was granted are accordingly without merit, and the judgments of the Court of Civil Appeals and of the trial court are in all things affirmed.

Opinion adopted by Supreme Court June 12, 1935.

Rehearing overruled July 3, 1935.